ANNIE K. WOOLSEY *v.* LEE LET AND E. C. WINSTON.

APPEAL FROM COMMISSIONER OF PRIVATE WAYS AND WATER RIGHTS, HONOLULU.

ARGUED JUNE 12, 1907.              DECIDED JUNE 22, 1907.

FREAR, C.J., WILDER, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF HARTWELL, J.

RIGHT OF WAY—*prescription, permissive use.*

   A decision of the commissioner of private ways is reversed in certain particulars upon the evidence.

COSTS—*a "day's hearing."*

   A mere sitting and adjournment to another day is not a "day's hearing" for the purpose of taxing costs under R. L. Sec. 2203.

OPINION OF THE COURT BY FREAR, C.J.

This is a suit for an adjudication of a prescriptive private right of way from the lower side of King street between Kekaulike and River streets in Honolulu to the plaintiff's premises between the premises of the respective defendants. The existence of the way is not questioned; its width alone is in dispute. All these premises and other premises were formerly parts of one tract (L. C. A. 170, R. P. 1088, to M. Kekuanaoa.) The lane runs down from King street through the middle of the tract straight for 75 or 80 feet and then makes two short turns, first diagonally to the

left and then nearly straight ahead again, when it reaches a corner of the plaintiff's lot, which was conveyed without mention of the way. Lee Let's lot is on the left side of the lane, along which it has a straight boundary from King street to a point near the end of the straight part of the lane. From that point to the plaintiff's lot on that side of the lane it does not appear to whom the land belongs and the boundary of the lane along there is not involved in this case. Lee Let has erected a two-story brick building upon his lot with one of its sides along the line of his boundary on the lane. On the other side of the lane there were formerly two lots, one behind the other, both of which now belong to Winston, the boundaries of which along the lane form almost a straight line from King street to the end of the straight part of the lane and then makes two short turns as already described, when it reaches the plaintiff's lot at one corner, that lot being in the rear of Winston's lots. Winston has erected a two-story stone building on his lots with one of its sides coinciding in part with his boundary along the lane and in part deviating to a greater or less extent—in some places without and in other places within his boundary.

The lane is now 2.9 feet wide at its entrance, 3.3 feet near the middle of the straight part where Winston's two lots join, 3.5 feet at the rear of Lee Let's lot, 4.4 feet to 4.3 feet along most of its rear portion and then narrows to 2.2 feet. The plaintiff claims a way $4\frac{1}{2}$ feet wide more or less throughout. The commissioner awarded her a way of that width, requiring a narrow strip to be taken from Lee Let's land along the entire length of his boundary on the lane, and ordered Winston to remove a pipe which he had placed in the lane at its entrance for the purpose of carrying off water from the roof and to give up a small triangle of land where his wall cut across outside of his boundary at the first turn in the rear. The defendants appealed.

All the buildings and fences about the lane burned down in each of the two great Chinatown fires of 1886 and 1900 and

the testimony has largely to do with conditions with reference to those dates. The testimony as to conditions before 1886 was in general to the effect that the lane was used mainly by persons on foot, but that occasionally persons rode in and out on small native horses and that occasionally dead persons were carried out in mats or in coffins, there being some difference of opinion as to whether the coffins were carried by persons at the ends alone or also by persons on the sides. There were then board fences along the sides of the lane. The width of the lane at that time is estimated at from three to five or six feet according to the memory of the various witnesses, some of whom recognize that their memory is hazy on this subject and others of whom show that their estimates of widths is far from accurate at the present time. It is generally agreed that the lane was wider at the crooked part in the rear than along its straight part in front. Doubtless the width seemed greater at that early date, especially to the witnesses who were then young, and perhaps to all when there were only fences along the lane than now when it is inclosed on both sides with two-story buildings. We will now take up the questions involved in order.

First, as to the boundary on the Lee Let side. The side of his building is conceded to be exactly upon the boundary called for by the deeds. The fence along that side also was exactly upon that boundary immediately before the fire of 1886 as shown by an accurate survey made at the time. So clear indeed was it that he had not encroached on the lane that after evidence had been taken at a number of hearings the case was dismissed as to him with the consent of the plaintiff. After some further evidence had been taken he was brought in again upon motion supported by affidavits of what was claimed to be newly discovered evidence nine months later. It is contended that error was committed in thus bringing him in again under all the circumstances, but in the view we take it will be unnecessary to pass upon that. The only evidence relied on against him which was different in character from that introduced before his

dismissal was that after the fire of 1886 Lee Let's predecessor erected a building with its side towards the lane nearly at right angles to King street, thus leaving a vacant triangular space between the building and the front part of the lane with the base on King street about ten feet wide until the present building was erected after the fire of 1900. The lane ran at an acute angle to King street on the Lee Let side. It does not appear, however, that the plaintiff claimed any right of way over this triangular piece. Indeed she apparently had forgotten that there had been such a vacant piece, if she ever knew it, before bringing the action or until shortly before she moved to bring Lee Let into the case again. Moreover, that triangular piece tapered to a point near the middle of the straight part of the lane and did not affect the remaining half of that part. If the plaintiff ever made any use of that piece by passing over it the use was permissive and not adverse or under a claim of right.

On the Winston side the commissioner properly ordered the removal of the water pipe at the entrance of the lane. It is true it was stated at one of the hearings before the commissioner on Winston's behalf that he was going to remove that and it was stated at the argument in this court that he had done so, but an inspection by the court showed that it had not been removed to a sufficient height to avoid obstruction even to persons on foot.

Winston's wall is practically on his boundary line at the entrance to the lane, but since it is built on a straight line along the straight part of the lane while the boundaries of his two lots along that side are not quite in a straight line, it projects beyond his boundary about 4-10 of a foot where the two lots join, but near the rear of the straight part of the lane it runs 2-10 of a foot inside of his boundary; then along the rear of the lane instead of following his boundary it cuts across the first turn, running at the widest point 1.15 feet outside of his boundary and at the second turn 2.7 feet inside of his boundary. These

are the measurements of the government surveyor. The measure ments of other surveyors differ very slightly from these. It is contended by the plaintiff that the commissioner erred in not allowing a strip along the straight part of the lane where the wall projects slightly beyond the boundary and by the defendant Winston that the commissioner erred in ordering the removal of the wall where it projects beyond the boundary at the first turn. We may note in passing as to the plaintiff's contention that she did not appeal, but, irrespective of that, the decision cannot be reversed as to her contention and must on the same grounds be reversed as to the defendant's contention.

The fence just before the fire of 1886 was along the boundary called for by the deeds as shown by the survey made at the time, but the evidence does not show that it was along the same lines when rebuilt soon after that fire. On the contrary it tends to show that two straight lines were run, one in place of the two lines which were not quite in the same straight line along the straight part of the lane, and one in place of the two lines in the rear portion of the lane. These new lines were on the whole advantageous not only for the erection of the building but for the use of the lane. When Winston purchased about five years after the fire of 1886 he replaced the fence with a new picket fence, at least along a portion of that side of the lane. He states that he followed the line of the fence standing there immediately before which was erected after the fire of 1886; also that when he erected his present building in 1901, that is, after the fire of 1900, he built the wall along the line of the charred remains of the posts of the fence burned in that fire. In this he is supported by the witness Armstrong.

The commissioner charged for twenty-one hearings at the rate of $6 a day. The record shows only seventeen sittings, at two of which nothing was done but to adjourn. In *Chun Lai v. Mang Young,* 10 Haw. 133, it was held that "the mere sitting and adjournment to another day is not a 'day's hearing' within the meaning of the statute." Only fifteen hearings should have been charged for.

It was agreed that each of the three parties should pay one-third of the stenographer's fees. The commissioner ordered other costs to be paid, $20 by the plaintiff, one-third of the balance by Winston and the other two-thirds by Lee Let.

The plaintiff is entitled to a right of way bounded by the Winston and Lee Let buildings as they stand and to the removal of the pipe on the Winston side in so far as it interferes with the use of the right of way, each party to pay one-third of the stenographer's fees, the remaining costs, including charges for only fifteen hearings, to be paid one-half by the plaintiff and one-half by Winston. The decision of·the commissioner is reversed to the extent to which it is inconsistent herewith.

*J. A. Magoon (Magoon & Lightfoot* on the brief) for plaintiff.

*W. W. Thayer (R. W. Breckons* with him on the brief) for Lee Let.

*C. H. Olson (Holmes & Stanley* with him on the brief) for Winston.